IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN WILLIAM WILD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LELAND DUDEK,[1] )<br>Acting Commissioner of the )<br>Social Security Administration )<br>)<br>Defendant. ) | Case No. 24-CV-10-GLJ |

## OPINION AND ORDER

Claimant John William Wild requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On February 16, 2025, Leland Dudek became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Leland Dudek is substituted for Martin O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account

---

[2] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was fifty-seven years old at the time of the administrative hearing. (Tr. 63). He obtained his GED, attended some college, and has past relevant work as a heavy equipment operator, stocker, and truck driver. (Tr. 43, 57). Claimant alleges an onset date of June 30, 2021, due to bulging discs in his neck and back, sciatica, rheumatoid arthritis, enlarged heart, depression, frequent urination, colon resections, colon perforation, acid reflux, chronic diarrhea, and prior colon cancer. (Tr. 292, 300,).

## Procedural History

On July 28, 2021, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 260-76). On July 5, 2023, ALJ Doug Gabbard, II, held an administrative hearing and determined Claimant was not disabled on August 1, 2023. (Tr. 14-59). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-6); *See* 20 C.F.R. §§ 404.971, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. (Tr. 33-34). At step two he determined that Claimant had the severe impairments of "cervical and lumbar back degenerative disc disease and status post colon cancer[, and] status post tumor removal in 2011." (Tr. 16). He found at step three that Claimant did not meet any Listing.

(Tr. 21-22). At step four he found Claimant had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). (Tr. 22). The ALJ then concluded that Claimant could return to his past relevant work as a heavy equipment operator, stocker, and truck driver, and was therefore not disabled. (Tr. 28-30).

### Review

Claimant contends that the ALJ erred by: (1) failing to properly analyze the medical opinion of psychologist Amy Hudson, Ph.D.; and (2) failing to explain how Claimant can perform a full range of medium work despite his back impairments. The Court finds merit in the first proposition and therefore reverses the Commissioner's decision.

The relevant medical evidence reveals that in June 2013 Claimant visited his primary care provider complaining of low back pain following a fall. (Tr. 399). He exhibited a positive straight leg raise test on his left side and had difficulties walking and bending. (Tr. 400). An x-ray revealed decreased disc height, and a February 2014 MRI of Claimant's lumbar spine revealed spinal stenosis with varying degrees of central canal and neural foraminal stenosis. (Tr. 401, 406, 446).

In September 2021 Claimant underwent a consultative examination with Dr. Christopher Sudduth. (Tr. 709). Claimant exhibited a steady gait and full strength throughout, but he had a positive straight leg raise test bilaterally, squatted with great difficulty, and exhibited mild limited range of motion of the lumbar spine. (Tr. 708-13). X-rays of Claimant's lumbar spine revealed endplate spurring, moderate intervertebral disc space narrowing, and mild to moderate lower lumbar facet arthropathy. (Tr. 722). In

December 2021 Claimant presented to his primary care provider reporting neck pain and bilateral back pain that had been ongoing for several years. (Tr. 727-29). Nurse Practitioner Melissa Hallum referred Claimant to pain management and noted Claimant had a normal gait but limited range of motion in his cervical and lumbar back and was positive for back and neck pain. (Tr. 729).

In February 2022 Claimant established care with Hussaini Sharmeen for pain management. (Tr. 780). Dr. Sharmeen's review of Claimant revealed bilateral lumbar and bilateral cervical paraspinal muscles positive for tenderness to palpation, a negative straight leg raise test bilaterally, a positive Flexion, Abduction, and External Rotation ("FABER") test bilaterally, and a positive sacroiliac compression test bilaterally (Tr. 780-85). Claimant was assessed with lumbar spondylosis and sacroiliac joint dysfunction of both sides. (Tr. 785-86). Claimant received a bilateral sacroiliac joint injection in late February 2022 and followed up with Dr. Hussaini on March 4, 2022, exhibiting the same positive orthopedic test results. (Tr. 769, 774-75). Dr. Hussaini diagnosed Claimant with lumbar radiculopathy and ordered an MRI of Claimant's lumbar spine. (Tr. 775-76). The MRI revealed moderate degenerative cervical spondylosis with disc disease and facet joint hypertrophy, mild bilateral neural foraminal stenosis, mild to severe bilateral lateral recess and subarticular zone stenosis, and mild to moderate impingement of the thecal sac. (Tr. 762-63).

Claimant received bilateral medial branch blocks in early March 2022 and indicated later that month that the blocks provided 50% relief for two days which permitted him to walk and work longer than usual, but it provided no ongoing relief. (Tr. 756). Claimant again exhibited a positive FABER test, positive sacroiliac compression test, and a negative

straight leg raise. (Tr. 756). In July 2022 Claimant transferred care to Kerri Farmer, APRN, and presented with diminished breath sounds bilaterally in addition to chronic back pain. (Tr. 837-40). In March 2023 Claimant reported he had a spinal cord stimulator implanted in the previous month, and Nurse Practitioner Farmer again noted Claimant had diminished breath sounds. (Tr. 836-37). A month later, Claimant reported to his psychiatric mental health nurse practitioner that the spinal cord stimulator helped alleviate sharp pains. (Tr. 861).

As to Claimant's mental impairments, the record reveals that on March 1, 2022, Claimant met with psychologist Amy Hudson, Ph.D., for a consultative examination. (Tr. 827-31). During examination, Claimant's apologized for wearing "grubby clothes" and Dr. Hudson found Claimant to be cycling between joking and "distraught tearfulness," and speaking "so rapidly . . . that [she] occasionally had to ask him to slow down and to repeat[] himself." (Tr. 828). Dr. Hudson found Claimant "presented in a manner indicating a bipolar process (rapid speech, rapid thinking, mood cycling during assessment)[,]" and concluded Claimant was capable of understanding and remembering simple and more detailed work instructions and performing related tasks, but that he was mildly limited in his capacity to maintain persistence and pace for a 4-hour period, adaption to workplace stressors, and in his ability to interact with co-workers and supervisors. (Tr. 829-31).

As a requirement for an application for employment, Claimant visited his primary care physician for a depression/anxiety assessment on March 23, 2022, both of which were unremarkable as claimant reported he was "very stable" on medication. (Tr. 752-55). Claimant visited Tawnya Peery, PMHNP, on April 13, 2023, for a follow-up evaluation

for substance use disorder and bipolar disorder. (Tr. 861). Examination of Claimant revealed a low limping gait and unsteady station. (Tr. 867). Claimant reported taking methamphetamine intravenously two weeks prior to this visit. (Tr. 861-62). Claimant was assessed with, *inter alia*, impulse control disorder and stimulant abuse with stimulant-induced anxiety disorder. (Tr. 867-68). Claimant followed-up with Nurse Practitioner Peery two weeks later, on April 27, 2023, for evaluation of depressive symptoms. (Tr. 877). Claimant again presented with a slow limping gait and unsteady station. (Tr. 877).

State agency physicians determined initially and upon reconsideration that Claimant could perform the full range of medium work. (Tr. 76-79, 107-08). In August 2021 State agency psychological consultant, Ryan Jones, Ph.D., concluded that Claimant's impairments were non-severe. (Tr. 93). Conversely, in March 2022 upon reconsideration state agency psychological consultant, William Farrell, Ph.D., found Claimant could understand, recall, and perform simple and detailed tasks with routine supervision, concentrate for two hour periods with routine breaks, pace and persist for an eight-hour work day and forty-hour work week despite his psychological symptoms, interact appropriately with coworkers, supervisors, and the public on a superficial basis, avoid hazards, and is able to adapt to his work setting with some forewarned changes in the work setting. (Tr. 110, 121).

At the administrative hearing, Claimant testified that he would often fall out of his work vehicle because he would lose feeling in his legs. (Tr. 48). He testified that the pain stimulator alleviated the sharp pains he experienced, but he still experienced some pain. (Tr. 48-49). Regarding his mental impairments, Claimant testified that his mental

impairments do not impair his ability to work, but he experiences depression more frequently since he ceased working. (Tr. 49-50).

In his written opinion at step four, the ALJ extensively summarized Claimant's hearing testimony and much of the medical evidence of record. (Tr. 14-30). He then found Claimant's statements about the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely consistent with the treatment records. (Tr. 23-24). The ALJ found the opinions of the state agency medical consultants persuasive as they were consistent with objective evidence. (Tr. 27). He found the initial determination by the state agency psychological consultant persuasive because his determination that Claimant had non-severe mental impairment was supported by the objective medical evidence. (Tr. 27-28). Conversely, he found Dr. Hudson's opinion not entirely persuasive because it was "somewhat inconsistent with her own examination finding and the other evidence of record." (Tr. 28). Particularly, the ALJ noted (i) Dr. Hudson's exam notes revealed "no problems with pace or persistence" because Claimant was intelligent and answered questions easily while having to be told to slow down, (ii) Claimant was stable on medication with negative depression and anxiety tests at his March 23, 2022, evaluation for anxiety/depression, and (iii) Claimant relapsed on methamphetamine in April 2023. (Tr. 28). The ALJ also found the medical opinion of Dr. Farrell not entirely persuasive on what appears to be the same basis, *i.e.*, because Dr. *Hudson's* conclusions on exam were somewhat inconsistent with her examination findings and other evidence of record. (Tr. 27-28).

## I. Medical Opinion of Dr. Hudson.

Claimant challenges the ALJ's RFC assessment, contending that the ALJ erred in evaluating the medical opinion of Dr. Hudson. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same,

the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) and (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Whereas the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 508 F.3d 1254, 1258 (10th Cir. 2007).

Claimant maintains that the ALJ erred in his analysis by (i) disregarding the significance of Claimant's episodes of crying, rapid thinking, mood cycling, and presenting with "grubby" clothes; (ii) finding it insignificant that Dr. Farrell also found Claimant to be moderately limited in persistence, pace, and adapting to work setting changes; and (iii) discounting Nurse Practitioner Peery's April 2023 findings documenting Claimant's fast and pressured speech, passive suicidal thoughts, tangential thought processes, depressed mood, flat sad, and manic affect and Dr. Hudson's similar findings prior to Claimant's drug relapse. The Court agrees and finds the ALJ erred in his evaluation of Dr. Hudson's medical opinion.

As it pertains to supportability, the ALJ incorrectly characterizes Dr. Hudson's findings as revealing "no problems with pace or persistence," because Claimant "was observed as intelligent and answered most of the questions easily even having to be told to slow down." (Tr. 28). However, the ALJ fails to explain how Claimant presenting with

-10-

rapid speech is not emblematic of a problem with pace or persistence and, in fact, the ALJ appears to disregard that Dr. Hudson's notes reflect Claimant's rapid speech, rapid thinking, and mood cycling are all indicative of bipolar disorder. (Tr. 28, 829).

In regard to the consistency factor, although the ALJ acknowledges Dr. Farrell's findings, the ALJ fails to credit Dr. Farrell's and Dr. Hudson's opinions as consistent with one another and eschews a proper analysis of Dr. Farrell's opinion by not discussing how, if at all, he considered the supportability and consistency factors with respect to Dr. Farrell's medical opinion. *See* (Tr. 27-28). It was error for the ALJ to "pick and choose" his way through the evidence of record in order to avoid finding Claimant disabled. *See e.g.*, *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235,1239) (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citations omitted); *Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."

The Court finds the ALJ erred in his supportability and consistency analysis of Dr. Hudson's and Dr. Farrell's medical opinions. On remand, the ALJ shall reconsider his analysis of the medical opinion evidence in accordance with the appropriate standards and medical evidence of record.

**II.      Soc. Sec. R. 96-8p**

Claimant also contends that the ALJ failed at step four by failing to properly consider the impact Claimant's cervical neuroforaminal, central canal, lateral recess, and subarticular zone stenoses would have on his RFC. Relatedly, Claimant asserts that the ALJ disregarded the instances in which he exhibited an abnormal gait, diminished breath sounds, and various positive orthopedic tests in addition to not explaining how Claimant could lift and carry up to 50 pounds or how Claimant could stand and/or walk for six hours out of eight hours a day despite his limitations.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc Sec. R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Here, the ALJ adequately considered the medical evidence of record in reaching his conclusions regarding Claimant's RFC. Particularly, the ALJ discussed Claimant's history of degenerative disc disease including, *inter alia*, the various MRIs revealing Claimant's spondylosis and varying degrees of stenosis, the 2021 consultative examination which revealed mild decreased revealed mild decreased range of motion of the lumbar spine with

pain, a positive straight leg raise test, a limping gait, and difficulties squatting, Claimant's April 2023 visit with mental health nurse practitioner Peery where Claimant presented with a limping gait and unsteady station, and Claimant's various treatments such as sacroiliac injections, branch blocks, and the spinal cord stimulator. (Tr. 24-26). Ultimately, the ALJ found Claimant's statements not entirely consistent with the evidence, and found the state agency medical consultants opinions that Claimant could perform the full range of medium work persuasive noting that although Claimant exhibited cervical and lumbar abnormalities, Claimant had "normal findings in relation to his range of motion of all other major joints and extremities bilaterally, muscle strength, tone, and bulk , gait, grip strength and function of the hand and fingers, reflexes, no use of any assistive device, and normal GI and abdomen exams." (Tr. 26-27).

Although the ALJ did not discuss Claimant's diminished breath sounds or positive sacroiliac compression and FABER tests in his opinion, the ALJ's opinion clearly indicates he adequately considered the medical evidence of record, and Claimant fails to explain how these findings demonstrate greater physical RFC limitations than those the ALJ identified. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine an RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The gist of Claimant's argument here is that the Court should reweigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot

do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

Nonetheless, because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing Claimant's RFC. If such analysis results in any adjustment to Claimant's RFC, the ALJ should then re-determine what work, if any, Claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED, and the case REMANDED for further proceedings.

**DATED** this 12th day of March, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**